**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

| | | |
|---|---|---|
| SHARLENE CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:24-cv-00129 |
| | ) | |
| AVERETT UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendant Averett University ("Averett" or the "University"), by counsel, and pursuant to 12(b)(6) of the Federal Rules of Civil Procedure and Civil Rule 7 of the Local Rules for the Eastern District of Virginia, submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff Sharlene Chapman ("Plaintiff" or "Ms. Chapman").

### MATERIAL ALLEGATIONS IN THE COMPLAINT[1]

Plaintiff was hired through a third-party contractor, Orbis Education, to serve as an adjunct nursing instructor teaching online classes for the University in January 2023. Compl. ¶ 7. As of the filing of this Memorandum, Plaintiff remains employed by Orbis and serves as an adjunct nursing instructor teaching exclusively online courses. Plaintiff alleges that she is a member of a protected class as a black individual. Compl. ¶ 8.

On June 28, 2024, Associate Dean Kathy Cline ("Dean Cline"), provided Plaintiff with a copy of her annual performance evaluation for the 2023 – 2024 academic year. Plaintiff received

---

[1] For the purposes of this Motion only, the facts alleged in the Complaint are presumed true. Additionally, the Complaint and its attachments are too voluminous to engage in a detailed recitation of the allegations, and what follows is a summary of the material facts alleged. Specific allegations pertinent to the Defendant's motion may be cited, as appropriate, throughout this brief.

4 out of 5 in all categories, except for a single category in which she was evaluated on performing assigned duties such as "review of course material, requests from administration, performance evals [sic], course reports, etc.., as required" and received a 3 out of 5. Compl. Ex. D1. Plaintiff received a 3 out of 5 evaluation for that category based on a failure to submit monthly evaluations; however, she claims she was unaware of the requirement to submit monthly evaluations. Compl. Ex. D1.

Plaintiff alleges the University assigned her a lower score on her performance review because of her race. Compl. ¶ 8. More specifically, Plaintiff claims she received one 3 out of 5 rating on her performance review for failing to turn in course reports, while another white instructor received a 4 out of 5. Compl. ¶ 8i. While Plaintiff also claims the University failed to address the alleged discriminatory practices when reported to management by other employees, see Compl. ¶ 9, Plaintiff produced a copy of Dr. Teresa Beach's July 26, 2024 Letter to her, in which she confirmed the University would "disregard this evaluation and just remove it, expunge it, and wait until the 24-25 academic year to complete one." Compl. Ex. G4. Additionally, Dr. Beach stated that, going forward, she would review the evaluation process with Dr. Cline and would do so without discussing "anything that has been shared by [Plaintiff.]" *Id.*

Plaintiff also alleges she is a qualified individual under the Americans with Disabilities Act, as amended ("ADA"), due to her diagnosis with cardiomegaly. Compl. ¶ 10. Plaintiff informed Dean Cline of her medical condition on June 11, 2024, and simultaneously requested that (1) Dean Cline move her to a full-time teaching position, and (2) the University provide her with an accommodation allowing her to teach three classes instead of two classes as she had taught previously. Compl. ¶ 9b, Ex. B4. Ultimately, Plaintiff was again assigned two classes instead of the three she requested. Plaintiff was informed of her course assignment on or about June 20,

2024. Compl. ¶ 10d. On June 21, 2024, Plaintiff agreed with the decision to assign one of her requested classes to Dr. Lott. Compl. Exs. C1-C2.

Plaintiff additionally alleges she has suffered emotional distress and retaliation due to the University's actions, "including the ongoing interactions with Kathy Cline and the failure to address her complaints." Compl. ¶ 11a. Specifically, Plaintiff claims that despite filing complaints with Human Resources and the EEOC, she suffered from anxiety, depression and stress resulting from the University's decision not to remove Dean Cline from her position. Compl. ¶ 11a. On July 25, 2024, Plaintiff first reported her concerns about disability and racial discrimination to Human Resources and the Dean of Nursing. Subsequently, on August 4, 2024, Plaintiff alleges she reported the same concerns to University President, Dr. Tiffany Franks ("President Franks"). Compl. ¶ 11c. Plaintiff also claims retaliation in connection with her performance evaluation score due to complaints raised by other educators. Compl. Part V.

As a result of the foregoing, Plaintiff filed the present action alleging (1) racial discrimination in violation of Title VII, (2) disability discrimination in violation of the ADA, (3) retaliation and (4) emotional distress.

## STANDARD OF REVIEW

Defendant seeks dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure – failure to state a claim. Before the Plaintiff is permitted to impose the substantial burden and expense of discovery on a defendant, she must plead "sufficient factual matter," accepted as true, "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing

*Twombly*, 550 U.S. at 556); *see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (noting that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in her favor. *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions ... without some further factual enhancement" are insufficient. *Twombly*, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## ARGUMENT

### I. Count I – Title VII Race Discrimination

In her first cause of action, Plaintiff alleges the University engaged in discrimination based on race when it assigned "unjustified performance evaluation scores to Plaintiff" and when it "chose white educators to teach online courses over Black educators" Compl. Part V. To prevail on her claims, Plaintiff ultimately must prove the following elements of a prima facie case under Title VII: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the

protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). At the motion to dismiss stage, though, Plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's complaint fails to meet this threshold, and her Title VII claims should be dismissed as a matter of law.

Plaintiff clearly fails to demonstrate she was subject to any adverse employment action in connection with her performance evaluation. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). Standing alone, neither a poor performance review nor a performance improvement plan constitutes an adverse employment action. *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 394-95 (D.Md. 2004), *aff'd*, 183 F. App'x 387 (4th Cir. 2006); *Emami v. Bolden*, 241 F. Supp. 3d 673, 685 (E.D. Va. 2017) (Smith, J.). Plaintiff's allegation that she received a lower performance evaluation score based on race fails because evaluations themselves cannot, as a matter of law, constitute an adverse employment action. Moreover, as Plaintiff acknowledged, the subject performance review was withdrawn and expunged. Compl. Ex. G4. Accordingly, it was not and cannot be used to adversely affect any terms and conditions of Plaintiff's employment. *See Sercer v. Holder,* 104 F. Supp. 3d 746 (E.D. Va. 2015) (quoting *James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 377 (4th Cir.2004)) ("A 'poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment'"); *Tang v. Eastern Virginia Medical School*, Civil Action No. 2:20cv575, 2022 WL

981942, *5 (E.D. Va. March 30, 2022) (Young, J.) (quoting *Shetty v. Hampton Univ.*, No. 4:12CV158, 2014 WL 280448, at *10 (E.D. Va. Jan. 24, 2014) ("While a negative performance evaluation could tangibly affect the terms and conditions of employment, such an evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment'").

Second, Plaintiff alleges she was subjected to an adverse employment action because the University "chose white educators," and specifically Dr. Lott, to teach one of the courses Plaintiff wanted. Plaintiff, however, has not identified any "different treatment from similarly situated employees outside the protected class." As Plaintiff admitted in her Complaint, Dr. Lott is not similarly situated to her. First, Dr. Lott is a full-time nursing professor employed by the University. Compl. ¶ 10e. Part-time employees cannot use full-time employees as relevant comparators under Title VII. *See Bowman v. ResCare, Inc.*, No. 3:16-CV-601-JAG, 2017 WL 4697071, *5 (E.D.Va Oct. 19, 2017); *see also Ilhardt v. Sara Lee Corp.,* 118 F.3d 1151, 1155 (7th Cir.1997) (" full-time employees are simply not similarly situated to part-time employees"). Second, Dr. Lott is a more qualified employee than Plaintiff; she has a Doctorate in Education and Healthcare Education, while Plaintiff only has a master's in nursing. Thus, Plaintiff's Complaint clearly demonstrates that Dr. Lott is more qualified than Plaintiff. Accordingly, her claim of race discrimination is, at best, "far too speculative because it lacks facts supporting the allegation," *Hayes v. Wall Recycling, LLC*, 2024 WL 1545185, *4 (E.D. N.C. Apr. 9, 2024) (citations omitted); *see Coleman,* 626 F.3d at 190-91 (finding that without such factual support, the complaint's allegations of discrimination do not rise above speculation), and therefore not actionable.

Accordingly, Plaintiff has failed to sufficiently plead her prima facie case under Title VII, and her racial discrimination claim should be dismissed.

## II. Count II – Disability Discrimination

Plaintiff's claim for disability discrimination also fails. "[T]o establish a prima facie case against [her] employer for failure to accommodate under the ADA, the plaintiff must show: (1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Thomas v. City of Annapolis*, 851 F. App'x 341, 348 (4th Cir. 2021) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). Although each element involves a question of fact, *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994), to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must nevertheless allege facts sufficient to state all the elements of a failure to accommodate claim. *See, e.g, Ainsworth v. Loudon Cnty. Sch. Bd*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012) (dismissing the failure to accommodate claim because plaintiff failed to allege facts showing that "she requested a reasonable accommodation …" or facts showing that "such a request was ever denied") (citation omitted).

Here, Plaintiff fails to sufficiently plead that she requested a reasonable accommodation. Plaintiff alleges the University failed to provide her with a reasonable accommodation by "denying Plaintiff access to certain job assignments and opportunities." Compl. Part V. Specifically, Plaintiff claims she was denied a reasonable accommodation because the University failed to assign her more online courses as she requested. *Id.* A request to teach <u>more</u> classes, however, is not a reasonable accommodation under the ADA. Essentially, Plaintiff's accommodation request was to 'promote' her from her previous two courseload schedule to a three courseload role. Critically, "a promotion to a higher-paying job is not a reasonable accommodation if an employee is not qualified for that position." *Martin v. Yokohama Tire Corp.*, No. 7:11-CV-00244, 2013 WL

7

6002344, *15 (W.D. Va. Nov. 12, 2013) (citing *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 483-84 (8th Cir. 2007) (recognizing the ADA does not require an employer to reassign a qualified disabled employee to a vacant position for which there is a more qualified applicant)). Plaintiff's request for a third course was really a request for a promotion – granting the request would give the Plaintiff greater responsibility and increased compensation. And, as part of her communications on this issue, Plaintiff specifically referenced promotion from her current instructor status to a full-time position, and with no indication there was a vacant, fulltime position available. Compl. Ex. B4. Consequently, Plaintiff's accommodation request to teach more classes, which would put her in line with full-time employees, was a clear request for a promotion and is not a reasonable accommodation as a matter of law.

Additionally, Plaintiff acknowledges that she, like the other nursing instructors, was offered the same online classes that she had taught in the prior semester. Compl. Ex. C1. Thereafter, Plaintiff asked to pick up additional, new classes, not as an accommodation, but in hopes of increasing her income. Plaintiff asserts that her disability precluded her from "perform[ing] clinical duties, which require long shifts and physical exertion." Compl. ¶ 10b. Plaintiff does not allege that she has ever performed clinical duties for the University, however. Her employment has only been in connection with teaching online courses, for which she did not need any accommodations. *Id.* And, to the extent Plaintiff asserts that other instructors, like Dr. Lott, were able to "take another online course for additional income," (Compl. ¶ 10e), she does not link that assignment to any claim of disability discrimination. *See id.*

Ultimately, Plaintiff's Complaint and accompanying Exhibits clearly demonstrate that (1) Plaintiff did not need any accommodations to continue teaching online classes; (2) Plaintiff's accommodation request was a request to be promoted to a full-time position, which is not a

reasonable accommodation; and (3) Plaintiff does not allege that additional class assignments, beyond her standard two, were not assigned to her because of any disability. Accordingly, Plaintiff's claim should be dismissed as a matter of law.

### III. Count III – Retaliation

In her third cause of action, Plaintiff attempts to assert a claim for Retaliation, based on complaints made by other employees and also her own post-evaluation and post-class assignment complaints to Human Resources and the EEOC. Compl. ¶11 (a-c), Part V. In connection with her performance evaluation, which Plaintiff acknowledges has been expunged, Plaintiff asserts she received a single 3 on that now-retracted evaluation because of a complaint made by someone else. *Id.* Plaintiff failed to allege or show, however, that she filed a charge of retaliation with the EEOC. The document attached to her complaint, dated August 5, 2024, included *suggested* edits to her original Charge; those edits sought to add "Retaliation" and "I believe I was … retaliated against due to another employee's complaint." Plaintiff's Right to Sue Letter, which was issued only a few days later, does not indicate that Retaliation was ever presented to or considered by the EEOC. Accordingly, such a claim is not properly before the Court. *Batchelor v. City of Wilson*, No. 5:23-CV-623-D, 2024 WL 4044339, *3 (E.D. N.C. Sept. 4, 2024) (quoting *Chacko v. Patuxent Ins.*, 429 F.3d 505, 508 (4th Cir. 2005) ("Before a person may file a claim in court under Title VII, the person must file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). An EEOC Charge suffices 'only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of'").

Even if the Court determines that Plaintiff's Charge included a Retaliation claim, her only assertion in that Charge is that someone other than her engaged in opposition activity. This is not a valid basis for a retaliation claim by Plaintiff. "The antiretaliation provision of Title VII prohibits

9

an employer from discriminating against an employee because <u>the employee</u> opposed any practice made unlawful under Title VII or because the employee made a charge of employment discrimination. 42 U.S.C. 2003e-3(a)." *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 359 (E.D. Va. 2023) (Smith, J.) (emphasis added).

Additionally, to the extent this Court determines Plaintiff is able to plead a claim for retaliation against the University, that claim still fails as a matter of law. "'To establish a prima facie claim of retaliation, a plaintiff must show: (1) that [s]he engaged in protected activity, (2) that the employer took a materially adverse action against [her,] and (3) there is a causal connection between the protected activity and the adverse action.'" *Id.* (citation omitted). The only protected activity in which Plaintiff engaged was notice to the University in late July and early August 2025 of her complaints about discriminatory treatment in connection with her performance evaluation and class assignments. Compl. ¶ 10c. By this time, however, Plaintiff's performance evaluation had been completed and subsequently expunged, and her class assignments had already been made. Plaintiff cannot establish the causal connection between her complaints and the class assignments or evaluation. Moreover, Plaintiff failed to identify any adverse employment action that occurred as a result of her late summer complaints to the University. Even though the performance evaluation was not an adverse employment action, as discussed above, it was deleted and expunged one day after Plaintiff's initial complaint. Similarly, Plaintiff had already been assigned and accepted two classes to teach, as she had the prior semester.

"Here, Plaintiff's retaliation claims … do not include non-conclusory, factual allegations that Plaintiff participated in legally cognizable protected activities, or if [s]he did, that any adverse employment actions could plausibly be linked to those activities … [Thus], "Plaintiff fails to successfully pair an alleged protected activity with an alleged adverse action such that there is a

retaliation claim that can survive a motion to dismiss here." *Merswin v. Esper*, Civil Action No. 1:20-cv-00548, 2022 WL 2103990, *2 (E.D. Va. 2022); *see Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) ("No facts in the complaint identify any protected activity by Coleman that prompted the retaliation of which he complains"); *Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (requiring a plaintiff to show that her employer "took the adverse action because of the protected activity") (citations omitted).

Because Plaintiff cannot establish any of the elements of a retaliation claim – and cannot prove she filed a charge asserting retaliation – her Third Claim for Relief should be dismissed as a matter of law.

**IV.     Count IV – Emotional Distress**

Finally, Plaintiff's Complaint fails to allege facts necessary to support a claim for Emotional Distress, as set forth in her Fourth Claim for Relief. While it is not clear whether Plaintiff is alleging Intentional or Negligent Infliction of Emotional Distress, both claims fail as a matter of law.

For Intentional Infliction of Emotional Distress, Plaintiff must provide "proof of the following: '(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe.'" *Kurgan v. Select Portfolio Servicing, Inc.*, Action No. 2:18cv661, 2020 WL 13607717, *11 (E.D. Va. Sept. 24, 2020) (Smith, J.) (citing *Harris v. Kreutzer*, 271 Va. 188, 624 S.E.2d 24, 33 (Va. 2006)). And, "[i]t is for the Court, in the first instance, to determine whether Defendants' conduct was so outrageous as to permit recovery …." *Crittendon v. Arai Americas, Inc.*, Civil No. 2:13-cv-567, 2014 WL 31490, *4 (E.D. Va. Jan. 3, 2014) (Doumar, J.) (citing *Womack v. Eldridge*, 215 Va. 338, 342 (1974)).

11

As the Supreme Court of Virginia has emphasized, "such torts are 'not favored' in the law." *Russo v. White,* 241 Va. 23, 26, 400 S.E. 2d 160 (1991); *see Kurgan,* 2020 WL 13607717, at *11; *Crittenden*, 2014 WL 31490 at *4; *Johnston v. Speedway, LLC*, Civil Action No. 7:21cv00100, 2021 WL 1662725, *5 (W.D. Va. Apr. 28, 2021) ("Claims for intentional infliction of emotional distress are disfavored in Virginia "because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury") (citation omitted). Thus, "[t]he standard by which the outrageousness element is judged has been described as 'exceedingly high.'" *Kurgan*, 2020 WL 13607717, at *11 (quoting *Darlington v. Harbour East Vill. LLC*, No. 3:20cv157, 2020 WL 3979664, at *7 (E.D. Va. July 14, 2020)). And, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kurgan,* 2020 WL 13607717, at *11 (citation omitted).

No such allegations were made here, and Plaintiff's Complaint fails to satisfy any of the required elements. She does not allege the University acted intentionally or recklessly with the specific purpose of inflicting emotional distress. *See Johnston v. Speedway, LLC*, Civil Action No. 7:21cv00100, 2021 WL 1662725, *6 (W.D. Va. Apr. 28, 2021) ("his complaint is devoid of any allegation that Speedway acted with the 'specific purpose of inflicting emotional distress' on him, or that it 'knew or should have known that emotional distress would likely result' from terminating him") (citation omitted). She does not allege conduct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Spencer v. Town of Bedford*, Case No. 6:18-cv-31, 2018 WL 5983572, *9 (W.D. Va. Nov. 2, 2018) (citation omitted).

Additionally, to satisfy the fourth prong, Plaintiff must allege "that she had [some] objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." *Crittenden*, 2014 WL 31490 at *4 (citation omitted). And, the stress must be "so severe that no reasonable person could be expected to endure it." *Id.* Thus, "[t]o survive a motion to dismiss in a case such as this, plaintiffs must plead sufficient facts to establish that they suffered a 'physical injury' that was 'the natural result of fright or shock proximately caused by the defendant's negligence.'" *McClary v. Greyhound Lines, Inc.*, Civil Action No. 7:17CV00098, 2017 WL 3725992, *2 (W.D. Va. Aug. 29, 2017) (quoting *Myseros v. Sissler*, 239 Va. 8, 387 S.E.2d 463, 464 (Va. 1990)). Plaintiff alleges only that she "has suffered significant emotional distress, anxiety, and mental anguish." Such allegations do not rise to the level of actionable Emotional Distress, as a matter of law. *See Klar v. Fannie Mae*, No. 3:13-cv-00462-JAG, 2014 WL 412533, at *7, (E.D. Va. Feb. 3, 2014) ("*Myseros* forbids recovery where the plaintiff complains only of emotional harm, which manifests itself physically").

Finally, to the extent Plaintiff asserts a claim for Negligent Infliction of Emotional Distress, that claim also fails as a matter of law. To "satisfy the elements of a negligent infliction of emotional distress claim, Plaintiff[] must allege (1) [the University] was negligent, (2) [the University's] negligence caused emotional distress, and (3) the emotional distress caused physical injury." *Elrod v. Busch Entertainment Corp.*, Nos. 4:09cv164, 4:09cv165, 4:09cv166, 2010 WL 5620918, *4 (E.D. Va. Dec. 14, 2010) (Miller, J.). More specifically, Plaintiff must "sufficiently allege a 'clear and unbroken chain of causal connection' between a physical injury which 'was the natural result of fright or shock proximately caused by [the defendant's] negligence' " *Spencer*, 2018 WL 5983572, at *9 (quoting *Lucas v. Henrico County School Bd.*, 822 F. Supp. 2d 589, 609

13

(E.D. Va. 2011) (quoting *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125 (2000)). Plaintiff however fails to allege any negligent acts by the University. Additionally, because Virginia law precludes recovery for claims of emotional distress alone, which is all Plaintiff has pled, her Fourth Claim for Relief should be dismissed as a matter of law. *Elrod,* 2010 WL 5620918 at *2.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Motion to Dismiss be granted, that the Complaint be dismissed in its entirety, with prejudice, and that judgment be entered in Defendant's favor.

**WHEREFORE**, for the reasons set forth in this Memorandum of Law in Support filed contemporaneously with the Motion, Defendant Averett University respectfully requests that this Court grant the instant Motion.

Respectfully submitted,

AVERETT UNIVERSITY

By: */s/ Stephanie P. Karn*
Stephanie P. Karn (VSB #38238)
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6013
Facsimile: (804) 420-6507
skarn@williamsmullen.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of January 2025, I electronically filed the foregoing Defendant's Motion to Dismiss Complaint with the Clerk of Court using the CM/ECF system, and have sent notice by mail and electronic mail to the following:

> Sharlene Chapman, *Pro Se Plaintiff*
> 34 Scotland Rd.
> Hampton, VA 23663
> sharleneachapman@yahoo.com

By: */s/ Stephanie P. Karn*
Stephanie P. Karn (VSB #38238)
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6013
Facsimile: (804) 420-6507
skarn@williamsmullen.com
*Counsel for Defendant*